**In the Matter of Samuel W. KEARNEY, Assistant Cashier, First National City Bank, New York, New York, Respondent.**

United States District Court
S. D. New York.

Aug. 28, 1964.

Robert M. Morgenthau, U. S. Atty., Arthur S. Olick, Asst. U. S. Atty., for the United States.

Shearman & Sterling, New York City, for respondent, Herman E. Compter, New York City, of counsel.

McLEAN, District Judge.

This is a motion to punish a witness in an Internal Revenue Service investigation, an officer of First National City Bank ("the Bank"), for contempt because of his alleged failure to comply with my order dated February 7, 1964 which directed him to testify and to produce upon his examination the reports, work papers and supporting documents prepared by the accounting firm of Berman & Jackson or by employees of the Bank "relating to the tax liability of the said John Dalessio and to loans made by the Richmond County National Bank to said John Dalessio, Alexander Dalessio and Michael Dalessio during the period 1958 through 1962." The nature of the Berman & Jackson report and the reasons for its preparation are described at length in my opinion granting the government's motion to direct its production. In re Kearney, 227 F.Supp. 174 (S.D.N.Y. 1964). The relevance of the report to the Internal Revenue Service investigation of the tax affairs of the Dalessio family lies in the fact that the report casts some light upon the operations of the Dalessios and the relationship between them and various other corporations and individuals.

Pursuant to the order, the witness appeared before an agent of the Internal Revenue Service and produced for his inspection pages 160–191 of the report and supporting schedules. He also agreed to produce work papers and memoranda pertaining thereto. He declined to produce the balance of the report or to state what it referred to. He testified that the remaining portions of the report were not relevant to the tax liability of John Dalessio or to the loans made to the Dalessios by the Bank. He was asked:

"Mr. Kearney, do any other portions of the Berman and Jackson report relate in any way to financial dealings between any of the Dalessios and the bank?"

to which the witness replied:

"To the best of my knowledge, no."

The government contends that the witness has not complied with the order and that he should be held in contempt.

It is apparent, I should think, from my opinion on the government's original motion to compel production of the report, that while the report contains a section entitled "Loans to the Dalessios and their Business Enterprises," it also deals with other loans which in no way involve the Dalessios. The section specifically pertaining to the Dalessio loans is contained in pp. 160–191 of the report which is the section that the witness produced. But my order did not specify that particular section of the report by title or page number. The order followed the language of the subpoena and directed the witness to produce the portions of the report and accompanying documents which "related to" the specified subjects. This cast upon the witness the burden of discovering whether there were any such portions of the report in addition to pp. 160–191.

I have read the report again. Pages 160–191 is the section most specifically devoted to the Dalessio loans and the Dalessio activities. There are, however, certain other pages of the report which make at least incidental reference to one or more members of the Dalessio family. Examples are pp. 5, 61–65, 67, 68, 117–118, 120–121, 135, 139–141, 231 and 234. Some of these passages as, for example, pp. 117–118, could be said to concern "financial dealings between any of the Dalessios and the bank." It may well be that these fragmentary references add little or nothing to the full discussion of the Dalessio transactions in pp. 160–191. Nevertheless, I believe that it would be too strict a construction of the subpoena.

and of my order to exclude them, and that for the sake of completeness they should be produced.

There may be further references in the report to the Dalessio loans. I have not attempted an exhaustive search. There may be further references to one or more of the corporations or individuals with whom the Dalessios, according to the report, were in some way connected. If there are any, these should be produced.

■ I will not hold the witness in contempt for what seems to me to be a minor deviation, if in fact it is a deviation at all, from the strict terms of the order. I will, however, direct him, either to produce the entire report and accompanying schedules, work sheets and memoranda, so that the government may see for itself which parts are relevant or, if the witness and the Bank are still unwilling to do this, then the witness shall read the report and the other documents listed in the order word for word and within ten days from the date of this order shall serve upon the government and file with me an affidavit stating that he has done so and specifying the numbers of each and every page of the report and the other documents which refer in any way to the Dalessios or to any of the corporations or individuals with whom they are allegedly connected. The witness shall produce the pages so specified for inspection by agents of the Internal Revenue Service. This should avoid any further misunderstanding and will, I hope, dispose of the matter.

■ The government also complains of the witness' refusal to answer certain questions. Some of these related to one Francis Cleveland. Others sought to ascertain whether employees of the Bank took part in the audit and whether Bank employees interviewed employees of Richmond County National Bank. None of these questions was specifically referred to in my order of February 7, 1964, hence the witness's refusal to answer them does not amount to contempt. The government seeks, however, a direction requiring the witness to answer them now.

■ After rereading the Berman & Jackson report, it is apparent to me that Cleveland, a former employee of Richmond County National Bank, in all probability has information about the Dalessio transactions. If employees of the Bank have worked with Berman & Jackson in preparing the report, they may know something about these matters. The investigation being carried on by the Internal Revenue Service is not limited, as the Bank seems to think, to the contents of the Berman & Jackson report. The revenue agents are entitled to ask the witness any other question which is relevant to the government's inquiry into the possible tax liability of John Dalessio. The names and addresses of persons who may have information on the subject is a proper avenue of inquiry. I therefore direct the witness to identify Francis Cleveland and to state his present address, if known to the Bank, and to produce any statement of Cleveland in the Bank's possession, if any there be, which relates to the loan transactions with the Dalessios and the corporations and individuals said to be connected with them. The witness is also directed to identify any other bank employees who have knowledge of this subject.

Having read the transcript of the examination of this witness, I will permit myself this final observation. The Bank is in no way involved in the possible tax liability of John Dalessio except as a witness in this investigation. There is no occasion for it to attempt to restrict the examination unduly. On the other hand, the revenue agents should not attempt to go beyond the proper scope of the inquiry. A little reasonableness is called for on both sides.

The specific directions which I have given to the witness sufficiently appear from the foregoing opinion. The motion to punish him for contempt is denied.

So ordered.